# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION

| | | |
|---|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, | ) ) ) | C/A No.:  2:11-cv-_____ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COMPLAINT** |
| | ) | (*Declaratory Judgment*) |
| NEW TRADITION BUILDERS, INC., a/k/a NEW TRADITIONS BUILDERS, INC., a/k/a NEW TRADITIONS CUSTOM HOME BUILDERS, INC., a/k/a NEW TRADITION CUSTOM HOME BUILDERS, INC. a/k/a NEW TRADITIONS ARCHITECTS, INC., a/k/a NEW TRADITION ARCHITECTS, INC. a/k/a NEW TRADITION PARTNERS, LLC a/k/a NEW TRADITIONS PARTNERS, LLC; NEW TRADITIONS CUSTOM HOME BUILDERS, INC. a/k/a NEW TRADITION CUSTOM HOME BUILDERS, INC.; NEW TRADITIONS ARCHITECTS, INC. a/k/a NEW TRADITION ARCHITECTS, INC.; NEW TRADITION PARTNERS, LLC a/k/a NEW TRADITIONS PARTNERS, LLC; FRED DANZIGER; JACK E. FOCKLER; CHERYL L. FOCKLER; NANCY K. JOHNSON; TERRY D. JOHNSON; JEAN C. LAFRANCE; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (*Insurance Contract*) (*Non-Jury Trial Demanded*) |

KATHERINE S. LAFRANCE;            )
JOSEPH MAURELLI; JEANNE M.        )
SHEEHY; ROBERT F. SHEEHY;         )
ROBERT WEISNER; and               )
DAVID H. WILLIAMS, JR.,           )
                                  )
            Defendants.           )
_____ )

TO:  THE DEFENDANTS, NEW TRADITION BUILDERS, INC., a/k/a NEW
     TRADITIONS BUILDERS, INC., a/k/a NEW TRADITIONS CUSTOM
     HOME BUILDERS, INC., a/k/a NEW TRADITION CUSTOM HOME
     BUILDERS, INC., a/k/a NEW TRADITIONS ARCHITECTS, INC.,
     a/k/a NEW TRADITION ARCHITECTS, INC. a/k/a NEW TRADITION
     PARTNERS, LLC. a/k/a NEW TRADITION PARTNERS, LLC; NEW
     TRADITIONS CUSTOM HOME BUILDERS, INC., a/k/a NEW
     TRADITION CUSTOM HOME BUILDERS, INC.; NEW TRADITIONS
     ARCHITECTS, INC.,  a/k/a NEW TRADITION ARCHITECTS, INC.;
     NEW TRADITION PARTNERS, LLC. a/k/a NEW TRADITION
     PARTNERS, LLC; FRED DANZIGER; JACK E. FOCKLER; CHERYL
     L. FOCKLER; NANCY K. JOHNSON; TERRY D. JOHNSON; JEAN
     C. LAFRANCE; KATHERINE S. LAFRANCE; JOSEPH MAURELLI;
     JEANNE M. SHEEHY; ROBERT F. SHEEHY; ROBERT WEISNER;
     AND DAVID H. WILLIAMS, JR.; HEREINABOVE:

     The Plaintiff, Builders Mutual Insurance Company, complaining of the

Defendants, New Tradition Builders, Inc., a/k/a New Traditions Builders,

Inc., a/k/a New Tradition Custom Home Builders, Inc., a/k/a New Traditions

Custom Home Builders, Inc., a/k/a New Traditions Architects, Inc., a/k/a

New Tradition Architects, Inc., a/k/a New Tradition Partners, LLC, a/k/a

New Traditions Partners, LLC; New Tradition Custom Home Builders, Inc.,

a/k/a New Traditions Custom Home Builders, Inc.; New Traditions

Architects, Inc., a/k/a New Tradition Architects, Inc.; New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC (collectively "New Tradition Builders"); Fred Danziger; Jack E. Fockler; Cheryl L. Fockler; Nancy K. Johnson; Terry D. Johnson; Jean C. LaFrance; Katherine S. LaFrance; Joseph Maurelli; Jeanne M. Sheehy; Robert F. Sheehy; Robert Weisner and David H. Williams (collectively the "Homeowners" unless individual designation is required), respectfully shows unto this District Court as follows:

## PARTY AND JURISDICTIONAL ALLEGATIONS

1.    The Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of North Carolina, with its principal place of business located in Raleigh, North Carolina; however conducts the business of selling and providing insurance to insureds in South Carolina, in Berkeley County, and in the town of Daniel Island under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

2.    The Defendant, New Tradition Builders, Inc., a/k/a New Traditions Builders, Inc., a/k/a New Tradition Custom Home Builders, Inc., a/k/a New Traditions Custom Home Builders, Inc., a/k/a New Traditions Architects, Inc., a/k/a New Tradition Architects, Inc., a/k/a New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC ("New Tradition Builders"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Berkeley County, South Carolina; and conducts its business operations in South Carolina, including within the Daniel Island, City of Charleston, South Carolina.

3.    The Defendant, New Tradition Custom Home Builders, Inc., a/k/a New Traditions Custom Home Builders, Inc. ("New Tradition Custom Home Builders"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Berkeley County, South Carolina; and conducts its business operations in South Carolina, including within the Daniel Island, City of Charleston, South Carolina.

4.     The Defendant, New Traditions Architects, Inc., a/k/a New Tradition Architects, Inc. ("New Traditions Architects"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Berkeley County, South Carolina; and conducts its business operations in South Carolina, including within the Daniel Island, City of Charleston, South Carolina.

5.     The Defendant, New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC ("New Tradition Partners"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Berkeley County, South Carolina; and conducts its business operations in South Carolina, including within the Daniel Island, City of Charleston, South Carolina.

6.     The Defendant, Fred Danziger ("Mr. Danziger"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.

7.    The Defendant, Jack E. Fockler ("Mr. Fockler"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.

8.    The Defendant, Cheryl L. Fockler ("Mrs. Fockler"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that she has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on her, her successors, and her assigns.

9.    The Defendant, Nancy K. Johnson ("Ms. Johnson"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that she has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on her, her successors, and her assigns.

10.    The Defendant, Terry D. Johnson ("Mr. Johnson"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns.

11.    The Defendant, Jean C. LaFrance ("Mr. LaFrance"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, him successors, and his assigns.

12.    The Defendant, Katherine S. LaFrance ("Ms. LaFrance"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that she has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on her, her successors, and her assigns.

13.    The Defendant, Joseph Maurelli ("Mr. Maurelli"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, him successors, and his assigns.

14.    The Defendant, Jeanne M. Sheehy ("Ms. Sheehy"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that she has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on her, her successors, and her assigns.

15.    The Defendant, Robert F. Sheehy ("Mr. Sheehy"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, him successors, and his assigns.

16.    The Defendant, Robert Weisner ("Mr. Weisner"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, him successors, and his assigns.

17.    The Defendant, David H. Williams, Jr. ("Mr. Williams"), is, upon information and belief, a resident and citizen of the Daniel Island, City of Charleston, Berkeley County, South Carolina and is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, him successors, and his assigns.  (Defendants Fred Danziger, Jack E. Fockler, Cheryl L. Fockler, Nancy K. Johnson, Terry D. Johnson, Jean C. LaFrance, Katherine S. LaFrance, Joseph Maurelli, Jeanne M. Sheehy, Robert F. Sheehy, Robert Weisner, and David H. Williams, Jr. will be collectively referred to herein as the "Homeowners" unless individual designation is required).

18.    This is a declaratory judgment action brought pursuant to Rule 57 of the *Federal Rules of Civil Procedure* and 28 *U.S.C.* §§ 2201-2202 (West Group 1993 and West Group Supp. 2005).

19.    The jurisdiction of this District Court is based upon the diversity of citizenship of the parties pursuant to 28 _U.S.C._ § 1332(a) (West Group 2005).

20.    The amount in controversy herein exceeds the sum of $75,000.00 exclusive of interest and costs.

21.    All matters and allegations herein contained are within the subject matter and personal jurisdiction of this District Court and venue is proper in this District Court and in the particular Division selected herein since the incidents giving rise to this action occurred in Berkeley County, South Carolina.

## FACTUAL ALLEGATIONS
(*The Insurance Policy*)

22.    Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

23.    On or about 1 January 2007, Builders Mutual issued a commercial general liability insurance policy, Policy No. CPP 0013645 05, to New Tradition Builders (the "CGL Policy") with a policy effective period running from 1 January 2007, until 1 January 2008, and, if applicable, as

may have been renewed annually thereafter until such was cancelled, lapsed, or non-renewed. (*A copy of the CGL Policy is attached hereto as **Exhibit "A"** and incorporated herein by reference.*).

24.    The CGL Policy insured New Tradition Builders for certain liability risks under the insuring agreement and, in turn, excluded certain liability risks pursuant to and through various policy exclusions. All of the terms, conditions, obligations, and duties under and pursuant to the CGL Policy are incorporated herein by reference.

25.    The CGL Policy does not include or constitute a performance bond covering work performed by New Tradition Builders and/or any other insured performing operations or activities for or on behalf of New Tradition Builders.

26.    The CGL Policy provided, in pertinent part, in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, through **SECTION I – COVERAGES**, pursuant to **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, via Paragraph **1.** entitled **Insuring Agreement**, as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking

those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

**b.**    This insurance applies to "bodily injury" or "property damage only if:

   **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

   **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, the "bodily injury" or "property damage" occurred, then any continuation, change[,] or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change[,] or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when an insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means the "bodily injury" or "property damage" has occurred or has begun to occur.

27.    The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to the same section, through Paragraph **2.** entitled **Exclusions**, as follows:

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.    Contractual Liability**

"Bodily injury" or "property damage" liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.    This exclusion does not apply to liability for damages:

    **(1)**    That the insured would have in the absence of the contract or agreement; or

    **(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        **(a)**    Liability to such party, or for the cost of, the party's defense has also been assumed in the same "insured contract"; and

        **(b)**    Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j.**    **Damage To Property**

"Property damage" to:

* * *

    **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired[,] or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs . . . **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.     Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.     Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not already been physically injured, arising out of

**(1)**     a defect, deficiency, inadequacy[,] or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work[,] Or Impaired Property**

Damages claimed for any loss, cost[,] or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal[,] or disposal of:

**(1)**    "Your product";

**(2)**    "Your work; or

**(3)**    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy[,] or dangerous condition in it.

28.    The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to **SECTION V - DEFINITIONS**, as follows:

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate[,] or dangerous;

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment[,] or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

9.    "Insured contract" means:

* * *

**f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

* * *

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions;

* * *

16.    "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**    Products that are still in your physical possession; or

    **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**    When all of the work called for in your contract has been completed.

        **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)**    When that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service maintenance, correction, repair[,] or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" [which] caused it.

* * *

21.    "Your product"

**a.**    Means:

**(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed[,] or disposed of by:

**(a)**    You;

* * *

**b.**    Includes:

**(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your product"; and

**(2)**    The providing of or failure to provide warnings or instructions.

* * *

22.    "Your work"

**a.**    Means:

**(1)**    Work or operations performed by you or on your behalf; and

**(2)**    Materials, parts[,] or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your work; and

**(2)** The providing of or failure to provide warnings or instructions.

29. The CGL Policy Policies provided, in pertinent part, in the endorsement entitled **EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work".

This endorsement applies to "your work" described in Paragraph 1. and 2. below performed by you [the named insured] or on your [the named insured's] behalf.

**1.** The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with

such a system.  Any spray on exterior PVC resin, or similar coating, that is utilized as the final exterior finish surface coating (commonly referred to as spray on siding).

2.    Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system, or any spray on exterior PVC resin, or similar coating, is used on any part of that structure.

30.    The CGL Policy provided, in pertinent part, in the **FUNGUS, MOLD, AND MILDEW EXCLUSION**, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This exclusion is added under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, under Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**, and under Paragraph **2.**, **Exclusions** of **Section I – Coverage C – Medical Payments**.

This insurance does not apply to:

**Fungus", Mold[,] and Mildew**

(1)    "Bodily injury", "property damage", "personal or advertising injury"[,] or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens;

(2)     Any sums that "you" become legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time;

(3)     Any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that "you" or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality;

(4)     Any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

These definitions are added to **Section V – Definitions**

"Fungus" means any of the plant-like group of organisms that does not contain chlorophyll; they derive their food either by decomposing organic matter from dead plants and animals, or by parasitic attachment to living organisms, thus causing infections and disease.  The word "fungus" includes molds, mildews, musts[,] and the rusts and smuts that infect grain and other plants.

"Fungus" does not include mushrooms, a product of agriculture for human consumption.

"Mycotoxin" means a highly toxic principle produced by molds or fungi.

31.    The CGL Policy provided, in pertinent part, in the endorsement

entitled **EXCLUSION – DAMAGE TO WORK PERFORMED BY**

**SUBCONTRACTORS ON YOUR BEHALF**, as follows:

> Exclusion **I.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> **2.     Exclusions**
>
> This insurance does not apply to:
>
> **I.     Damage To Your Work**
>
>> "Property damage" to "your work" arising out of or any part of it and included in the "products-completed operations hazard".

## FACTUAL ALLEGATIONS
### (*The Defective And/Or Faulty Construction*)

32.    Builders Mutual repeats and realleges each and every

allegation heretofore contained in this Complaint as is fully set forth herein

verbatim.

33.    Upon information and belief, during the time periods between 1

January 2006, and 31 December 2008, New Tradition Builders and the

Homeowners entered into separate real estate purchase agreements (the

"Individual Real Estate Purchase Contracts") through which New Tradition

Builders, and/or one of its sister and/or alter ego corporations (*i.e.*; New

Tradition Custom Home Builders, Inc., a/k/a New Traditions Custom Home Builders, Inc.; New Traditions Architects, Inc., a/k/a New Tradition Architects, Inc.; New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC) agreed to construct individual units of a multifamily condominium development (the "Individual Condominium Residence Units") located at 250 Island Park on Daniel Island, City of Charleston, South Carolina (the "250 Island Park Condominium Project").

34.    Upon information and belief, the 250 Island Park Condominium Project is a multi-family residential development presently consisting of two multi-unit, four story buildings comprised of three stories of residential living spaces/area elevated over under-building, grade level private parking.

35.    Upon information and belief, on or about 22 May 2006, New Tradition Builders obtained a building permit from the City of Charleston solely for the purpose of undertaking construction of the foundation for the 250 Island Park Condominium Project.

36.    Upon information and belief, during the period between 2 May 2006, and 27 June 2007, New Tradition obtained building permits from the City of Charleston for the purpose of undertaking construction of the main structures comprising the 250 Island Park Condominium Project itself.

37.    Upon information and belief, during the period between 30 May 2007, and 11 July 2007, the City of Charleston Building issued New Tradition various Certificates of Occupancy for the Individual Condominium Residence Units in the 250 Island Park Condominium Project.

38.    Prior to and during construction of the 250 Island Park Condominium Project, New Tradition retained several subcontractors to undertake the actual construction of the 250 Island Park Condominium Project and the Individual Condominium Residence Units therein.

39.    Upon information and belief, after the Homeowners took possession of the various Individual Condominium Residence Units contained within the 250 Island Park Condominium Project, they began to notice various alleged construction defects and poor workmanship in their respective Individual Condominium Residence Units and noticed evidence of alleged faulty workmanship and defective construction.

40.    As a result of the alleged construction defects and faulty workmanship problems in their respective Individual Condominium Residence Units, upon information and belief, the Homeowners complained to New Tradition Builders asserting their respective Individual Condominium Residence Units contained various alleged construction

defects and poor workmanship resulting in serious moisture intrusion into their respective Individual Condominium Residence Units and, in turn, substantial damages to the Individual Condominium Residence Units for which New Tradition Builders was responsible.

41.    Upon information and belief, New Tradition Builders either completely denied any and all liability for the alleged construction defects and/or faulty workmanship in the Homeowners' respective Individual Condominium Residence Units or was unable to repair and/or remediate the problems found in the Individual Condominium Residence Units to the satisfaction of the Homeowners.

42.    As a result of the alleged construction defects/faulty workmanship problems in the Individual Condominium Residence Units, upon information and belief, the Homeowners complained to New Tradition Builders, which, in turn, complained to all of its various subcontractors asserting the Individual Condominium Residence Units contained various alleged construction defects and poor workmanship resulting in both serious moisture intrusion into the Individual Condominium Residence Units and, in turn, substantial damages to the Individual Condominium Residence Units for which one or more of the various subcontractors were responsible.

43.    Upon information and belief, one or more of the various subcontractors either completely denied any and all liability for the alleged construction defects and/or faulty workmanship in the Individual Condominium Residence Units or were unable to repair and/or remediate the problems in the Individual Condominium Residence Units to the satisfaction of either New Tradition Builders and/or the Homeowners.

44.    As a result of various construction defects found in the Individual Condominium Residence Units at the 250 Island Park Condominium Project, the Homeowners brought a civil suit against New Tradition Builders in the Berkeley County Court of Common Pleas in an action entitled, _Fred Danziger, Jack E. Fockler, Cheryl L. Fockler, Nancy K. Johnson, Terry D. Johnson, Jean C. LaFrance, Katherin S. LaFrance, Joseph Maurelli, Jeanne M. Sheehy, Robert F. Sheehy, Robert Weisner, and David H. Williams, Jr. v. New Tradition Builders, Inc., New Traditions Custom Home Builders, Inc., New Traditions Architects, Inc., and New Tradition Partners, LLC,_ Berkeley County Court of Common Pleas, Civil Action No. 2010-CP-08-142, filed January 14, 2010 (the "Underlying Action") (_A copy of the Complaint in the Underlying Complaint and all relevant amended pleadings are collectively attached hereto as_ **_Exhibit "B"_** _and incorporated herein by reference_).

45.    The Complaint in the Underlying Action asserted claims against

New Tradition Builders for:

(a)    negligence (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 21-24 (including all subparts therein));

(b)    fraudulent misrepresentation/non-disclosure (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 26-33);

(c)    negligent misrepresentation/non-disclosure (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 35-38);

(d)    breach of contract (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 40-45 (including all subparts therein));

(e)    breach of contract accompanied by a fraudulent act (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 47-49);

(f)    breach of contract accompanied by a fraudulent act (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 51-53);

(g)    breaches of the express and/or implied warranties of habitability, of merchantability, of fitness for a particular purpose, of good and workmanlike service, and against latent defects (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 55-59);

(h)    breach of the implied covenant of good faith an fair dealing (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 61-73); and

> (i)    various violations of the *South Carolina Unfair Trade Practices Act* as codified in *S. C. Code Ann.* § 39-5-10 et. seq. (Thomson Reuters West 2009). (*UA Complaint*, paras. 6-9, 12-19 (including all subparts therein), and 65-68).

46.    The Complaint alleged that, as a result of New Tradition Builders' faulty workmanship and defective construction in the Individual Condominium Residence Units at the 250 Island Park Project, the Homeowners had been significantly damaged due to, among other things, numerous construction defects and faulty workmanship which need to be replaced, repaired, and/or corrected, the diminished value of the Individual Condominium Residence Units at the 250 Island Park Project, and the significantly increased maintenance and reconstruction costs.

47.    The Homeowners together have sought unspecified actual, punitive, and treble damages against New Tradition Builders, together with attorneys' fees, litigation costs, pre-judgment interest, and post-judgment interest.

48.    The Homeowners alleged examples of New Tradition Builders' faulty workmanship and defective construction included, but were not limited to, the following:

(a)    Water intrusion and degradation from improperly installed doors, windows, walls, balconies, brick weeps, sloped brick sill rows, brick veneer, ceilings, roof, trim, flashing and sealant in violation of the International Building Code (2003) and industry standards;

(b)    Exterior door units' abutted by six inch trim boards with improper sealant joints or lack of sealant of Homeowners' Residence in violation of applicable building codes and industry standards;

(c)    Exterior and interior window damage resulting from improper application of brick veneer, trim and sealant in violation of applicable building codes and industry standards;

(d)    Roofing installation deficiencies observed in the composition shingles, single ply thermo roof setting, and liquid-applied roof coating.

(e)    Several locations of water retention and inadequate drainage existing through 250 Island Park in violation of building codes and industry standards;

(f)    Improper installation of liquid-applied coating on mechanical roof decks and improper drainage of HVAC compressor condensate on the liquid applied coating in violation of IBC requirements;

(g)    improper and/or incorrectly installed roofing materials;

(f)    improper installation of flashings;

(i)    improper and faulty installation of HVAC system.

49.    In    March    2010,    New    Tradition    Builders    tendered    the Homeowners' claim to Builders Mutual and, in turn, requested Builders Mutual to provide New Tradition Builders with a legal defense and indemnification in the Underlying Action.

50.    Builders Mutual has been providing New Tradition Builders with a legal defense in the Underlying Action; however Builders Mutual's provision of a legal defense to New Tradition Builders in the Underlying Action is being done under a full and complete reservation of rights.

## FIRST CAUSE OF ACTION
*(Declaratory Judgment – Insurance Policy)*

51.    Neither the CGL Policy nor the applicable South Carolina case law provides liability insurance coverage to New Tradition Builders or any other alleged insured for any alleged "property damage" expected or intended from the standpoint of the insured.

52.    Neither the CGL Policy nor the applicable South Carolina case law provides liability insurance coverage to New Tradition Builders or any other alleged insured for alleged "property damage" known by an insured or designated employee to have existed prior to the commencement of the applicable policy period.

53.    Neither the CGL Policy nor the applicable South Carolina case law provides liability insurance coverage to New Tradition Builders or any other alleged insured for any alleged "breach of contract" by an insured.

54.    The CGL Policy and the applicable South Carolina law provides insurance coverage for "property damage" only when and if such "property damage" is caused by an "occurrence" as that term is defined in the CGL Policy and as it is interpreted by South Carolina law.

55.    The Homeowners' claims against New Traditions Builders do not constitute an "occurrence" as defined by the CGL Policy or the applicable South Carolina law in that the damages sustained were the natural and expected consequences of the faulty workmanship and defective construction performed either by or on behalf of New Traditions Builders.

56.    The CGL Policy specifically excludes liability coverage to New Tradition Builders or any other alleged insured for, *inter alia*, alleged "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

57.    Upon information and belief, the Individual Condominium Residence Units at the 250 Island Park Project constitutes the "your work" of New Tradition Builders.

58.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

59.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your product" arising out of it or any part of it.

60.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

61.    The CGL Policy defines the term "your work" to constitute work or operations performed by New Tradition Builders or by some third-party on behalf of New Tradition Builders and specifically includes material, parts, and/or equipment furnished by New Tradition Builders or by some third-party on behalf of New Tradition in connection with New Tradition Builders' work or operations and/or the third-party's work or operations on behalf of New Tradition Builders.

62.     Upon information and belief, the Individual Condominium Residence Units at the 250 Island Park Project constituted the "your work" of New Tradition Builders as that phrase was defined in the CGL Policy.

63.     The CGL Policy defines the term "your product" to constitute any goods or products manufactured, sold, handled, distributed, and/or disposed of by New Tradition Builders, including any containers, materials, parts, and/or equipment furnished in connection with such goods and/or products.

64.     Upon information and belief, the Individual Condominium Residence Units at the 250 Island Park Project constituted the "your product" of New Tradition Builders as that phrase was defined in the CGL Policy.

65.     The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "impaired property" arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a delay or failure by New Tradition Builders and/or anyone acting on New Tradition Builders' behalf to perform a contract or agreement in accordance with its terms.

66.    The CGL Policy specifically excludes liability coverage to New

Tradition Builders for, *inter alia*, any sums which New Tradition Builders

become legally obligated to pay as damages because of the:

> The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.

67.    The CGL Policy specifically excludes liability coverage to New

Tradition Builders for, *inter alia*, any sums that New Tradition Builders

become legally obligated to pay as damages because of:

> Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

68.    The CGL Policy specifically excludes liability coverage to New Tradition Builders for, *inter alia*, any sums that New Tradition Builders becomes legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss at any time".

69.    The CGL Policy specifically excludes liability coverage to New Tradition Builders for, *inter alia*, "bodily injury" and/or "property damage" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

70.    The CGL Policy specifically excludes liability coverage to New Tradition Builders for, *inter alia*, any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that either New Tradition Builders or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality.

71.    The CGL Policy specifically excludes liability coverage to New Tradition Builders for, *inter alia*, any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

72.    The CGL Policy specifically excludes liability coverage to New Tradition Builders for, *inter alia*, " '[p]roperty damage" to "your work" arising out of or any part of it and included in the 'products-completed operations hazard.' "

73.    The CGL Policy, as interpreted by South Carolina law, does not permit insurance coverage for New Tradition Builders and/or any of its subcontractors or others doing work on behalf of New Tradition Builders at the Individual Condominium Residence Units at the 250 Island Park Project for the removal, repair, and/or replacement of defective work whether done by New Tradition Builders and/or by someone or some third-party on New Tradition Builders' behalf.

74.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and defective construction performed by New Tradition Builders and/or on behalf of New Tradition Builders by one or more subcontractors and/or sub-subcontractors at the Individual

Condominium Residence Units at the 250 Island Park Project does not constitute an "occurrence" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law in that the damages sustained were the natural and probable consequences of the alleged faulty workmanship and defective construction.

75.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of New Tradition at the Individual Condominium Residence Units at the 250 Island Park Project does not constitute "property damage" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

76.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of New Tradition at the Individual Condominium Residence Units at the 250 Island Park Project, even if it did constitute an "occurrence" under the CGL Policy, does not constitute "property damage" as that term is defined in the CGL Policy.

77.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of New Tradition Builders at the Individual Condominium

Residence Units at the 250 Island Park Project, even if it did constitute an "occurrence" under the CGL Policy and even if it did constitute "property damage" as that term is defined in the CGL Policy, that such damage was still excluded from coverage since it was "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" as those terms are defined by the CGL Policy.

78.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Fungus, Mold[,] and Mildew Exclusion***, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

79.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Exclusion – Exterior Insulation And Finish Systems***, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

80.    Builders Mutual is entitled to a declaration by this District Court that the CGL Policy, pursuant to the endorsement entitled ***Exclusion – Damage To Work Performed By Subcontractors On Your Behalf***, to the extent this endorsement may be applicable, completely eliminated any and all liability insurance coverage for any and all subcontractors contracted by New Tradition Builders to provide materials, goods, or perform services or work on the Individual Condominium Residence Units at the 250 Island Park Project.

81.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Contractual Liability*** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

82.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Expected Or Intended Injury*** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

83.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Property_** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

84.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Your Product_** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

85.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Your Work_** exclusion, do not obligate Builders Mutual to provide New Tradition Builders Mutual or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

86.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Impaired Property Or Property Not Physically Injured*** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

87.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Recall Of Products, Work, Or Impaired Property*** exclusion, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense and/or indemnification for the claims asserted by the Homeowners in the Underlying Action.

88.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all applicable exclusions, do not obligate Builders Mutual to provide New Tradition Builders or any other insured any insurance coverage regarding the claims of property damage set forth by the Homeowners in the Underlying Action.

89.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide New Tradition Builders or any other insured with a legal defense to the Homeowners' claims in the Underlying Action.

90.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide New Tradition Builders or any other insured indemnification for the Homeowners' claims in the Underlying Action.

WHEREFORE, the Plaintiff, Builders Mutual Insurance Company, having fully complained against the Defendants, New Tradition Builders, Inc., a/k/a New Traditions Builders, Inc., a/k/a New Tradition Custom Home Builders, Inc., a/k/a New Traditions Custom Home Builders, Inc., a/k/a New Traditions Architects, Inc., a/k/a New Tradition Architects, Inc., a/k/a New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC; New Tradition Custom Home Builders, Inc., a/k/a New Traditions Custom Home Builders, Inc.; New Traditions Architects, Inc., a/k/a New Tradition Architects, Inc.; New Tradition Partners, LLC, a/k/a New Traditions Partners, LLC; Fred

Danziger; Jack E. Fockler; Cheryl L. Fockler; Nancy K. Johnson; Terry D. Johnson; Jean C. LaFrance; Katherine S. LaFrance; Joseph Maurelli; Jeanne M. Sheehy; Robert F. Sheehy; Robert Weisner and David H. Williams, respectfully requests this District Court to:

     a.    Declare that the faulty workmanship and construction defects claims asserted by the Homeowners against New Tradition Builders or any other insured in the Underlying Action and arising out of and/or related to the construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project does not constitute an "occurrence" as defined by the CGL Policy and the applicable South Carolina law;

     b.    Declare that the faulty workmanship and construction defects claims asserted by Homeowners against New Tradition Builders in the Underlying Action and arising out of and/or related to the construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project does not constitute "property damage" as defined by the CGL Policy and the applicable South Carolina law;

     c.    Declare that the faulty workmanship and construction defects claims asserted by the Homeowners against New Tradition Builders or any other insured in the Underlying Action and arising out of and/or related to the construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project are excluded by one or more sections of Exclusions "*a*", "*b*", "*j*", "*k*", "*l*", "*m*" and/or "*n*" of the CGL Policy;

d.    Declare that the CGL Policy issued by Builders Mutual Insurance Company covering New Tradition Builders or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to New Tradition Builders or any other insured for the faulty workmanship and construction defects claims asserted against New Tradition Builders by the Homeowners in the Underlying Action arising out of construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project;

e.    Declare that the CGL Policy, particularly the **_Exclusion – Damage To Work Performed By Subcontractors On Your Behalf_**, and others specifically named herein, issued by Builders Mutual Insurance Company covering New Tradition Builders or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to New Tradition Builders or any other insured for the faulty workmanship and construction defects claims asserted against New Tradition Builders or any other insured by the Homeowners in the Underlying Action and arising out of construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project;

f.    Declare that the CGL Policy, particularly the **_Fungus, Mold[,] and Mildew Exclusion_**, and others specifically named herein, issued by Builders Mutual Insurance Company covering New Tradition Builders or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to New Tradition Builders or any other insured for the faulty workmanship and construction defects claims asserted against New Tradition Builders or any

other insured by the Homeowners in the Underlying Action and arising out of construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project;

g.    Declare that the CGL Policy issued by Builders Mutual Insurance Company covering New Tradition Builders or any other insured does not require Builders Mutual Insurance Company to provide a legal defense to New Tradition Builders or any other insured for the faulty workmanship and construction defects claims asserted against New Tradition Builders or any other insured by the Homeowners in the Underlying Action and arising out of construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project;

h.    Declare that the CGL Policy issued by Builders Mutual Insurance Company covering New Tradition Builders or any other insured does not require Builders Mutual Insurance Company to provide indemnification to New Tradition Builders or any other insured for the faulty workmanship and construction defects claims asserted against New Tradition Builders or any other insured by the Homeowners in the Underlying Action and arising out of construction of the Individual Condominium Residence Units contained within the 250 Island Park Condominium Project;

i.    For the costs and disbursements of this action; and

j.    For such other relief as this District Court deems just and proper under the circumstances.

Respectfully submitted:

*NEXSEN PRUET, LLC*


By:    **_s/Stephen P. Groves, Sr._**
Stephen P. Groves, Sr., Esquire
Federal I.D. No.   2490
205 King Street, Suite 400
Charleston, South Carolina  29401
Telephone:  843.720.1725
Telecopier:  843.720.1777
E-Mail:  SGroves@nexsenpruet.com

*Attorneys for the Plaintiff,*
*Builders Mutual Insurance Company*

Charleston, South Carolina

13 January 2011